11534 Morris v. Bessemer City Board of Education  I think that Judge Wilson's question earlier got to the heart of this matter, which is at its core, plaintiff's appeal is asking you to re-weigh testimony and second-guess the credibility decisions of the jury. They rely heavily on that no rational juror could have reached this verdict, but that's sort of a conclusion that skips over a lot of the standard of review that you guys have to take into account. So, obviously, when the court looks at a jury verdict, they look at the sufficiency of evidence de novo, of course. But importantly, the court must view all the evidence in the light most favorable to the verdict, draw all reasonable inferences and credibility choices in favor of that verdict. And once again, you cannot re-weigh the evidence or second-guess credibility, which is really at the core of this appeal. Your Honor, Judge Brasher, you are correct that when it came to the Equal Pay Act, the jurors found that Morris failed to prove her job and her male comparator's job, the director of maintenance, Mr. Richard Mitchell, which was her lone comparator, that they did not have jobs that were substantially equal in skill, effort and responsibility. When it came to the retaliation claim, the jury concluded that her transfer from system wide AD to a 12-month teaching position was not because of her protected activity. And we've outlined in our brief that both of those verdicts were well supported by in-depth testimony and evidence. There was a lot of testimony about Ms. Morris' role as athletic director, what that entailed, including that she only had duties that covered the middle school and the high school because those are the only two schools that have sports that fall under the Alabama High School Athletic Association. On the other hand, Mr. Mitchell handled maintenance for the entire school district. He was doing things like determining what maintenance needed to be done, capital planning, going out and dealing with plumbing issues, electrical issues. He had a storm like yesterday. If there are trees down, the electricity is out. He was doing duties that were much different than what she was doing, which was really athletic duties, eligibility for athletes, planning schedules for teams, lots of work that was just in the office. And so I think the jurors had plenty of evidence to make the determination that their jobs were not substantially equal. Same thing goes with the retaliation claim. Dr. Keith Stewart testified extensively about the reasons why he made that determination. And to Judge Wilson's point, he did testify that when he interviewed for the superintendent's job, he questioned whether or not a system the size of Bessemer even needed an AD. That that position was locally funded, which means they don't get any money from the state to pay for it. He wondered if that was really a wise use of resources from the very beginning. But he did give that a chance and sort of evaluate that over a period of three years before he made the decision to cut it. So because the court must view that evidence in the light and is favorable to the verdict and draw all the reasonable inferences and favor the credibility choices of the jury, I think the jury verdict has to stand. Could you just address the, what's the basis for introducing the settlement agreement? It may not matter given the way the jury resolved the case, but just, it does seem like that was at least of minimal to perhaps no relevance. I think what we would say about that, Your Honor, is Ms. Morris' actual pay was set by that settlement agreement. And I think from our perspective, if we had sent the jury into the back without information about why her pay was what it was, and it was because we had agreed to it into a settlement agreement, they would have been left with no information about why her pay was set at the level it was. And if they had gotten to the question of whether or not their pay should have been equal, that could have potentially been used against us if there wasn't a legitimate basis for what her actual pay was at the time. And I think our argument was it was set because of that settlement agreement. And to the extent that she had agreed to it through mediation with the assistance of counsel, that that was a factor other than sex that we could rely on as an affirmative defense. That seems wrong to me, I guess. As a legal matter, the fact that a woman accepts lower pay than a man cannot possibly be a justification for paying a woman on the basis of sex lower than the man, right? If you had, you know, 20 people working on a line, right, they're working on a manufacturing facility, and the company says, we're going to offer the men $20 an hour, and we're going to offer the women $10 an hour, and the women accept $10 an hour, that's not a justification for paying the women less, right? The fact that they accepted it? No, I don't think so. I think for us it was a piece of evidence that showed that that's why her pay was set at what it was. And I think we wanted to argue that was a factor other than sex as an affirmative defense, but I think to your point, we don't get there. It did not make a difference in the trial because the jury ultimately found that her job was not substantially equal. The jury never got there. So if that was an error, I don't think it was an error that had any effect on the verdict whatsoever. It seems odd that the former athletic director would not be permitted to participate in the selection of the new head football coach. Well, Your Honor, I think if you look back at the testimony, you will see that Dr. Stewart had allowed the principal and the AD to be involved in those decisions in the past. I think there had been a lot of turnover in the football position. I think that had gotten very acrimonious. I think there were lots of different opinions about what coach should be hired. And I think just as the CEO of the system, he decided, you know, the buck stops with me. I'm the one that has to make that recommendation to the board. I have to make all personnel recommendations to the board. So I'm just going to take control of this matter. You know, I think if you look at, there's a decent amount of case law, I can't cite it to you, but being removed from something like a committee or something like that is not necessarily some type of adverse action. It doesn't rise to that level. And so I think if you look back at Dr. Stewart's testimony, he was just sort of frustrated with the constant turnover, the sort of disagreements that were arising about who should be the coach, and he just sort of took control of that decision. It does seem odd that you're athletic director, and then you get demoted and you're teaching physical education at an elementary school. I mean. Well, to that point, Your Honor, I think Dr. Stewart worked hard to find a place to put Ms. Morris. I think if you look at the student's first act, you know, he could have moved to terminating her for justifiable decrease in the number of positions or taking a more adverse action. I think he was trying to place where she could use her talents. And he, of course, allowed her to keep her pay when he did that. So I think he tried to find a place that she could contribute, could keep her pay. He could save a little bit of money, and hopefully that would have been a win-win for the system and for her. Rather than just saying we don't need this position anymore, which you can do under the student's first act, you can say we're going to have a justifiable decrease in the number of positions. We don't need this position. We're going to terminate you. He could have done that. Instead, I think he gave her a softer landing place and tried to find a place where she once again could contribute. And he let her keep her pay when he did that. But he testified to more or less all of that, right? Yes. And then the jury basically said we think he's telling the truth. That is absolutely correct, Your Honor. Thank you. I did want to point out that Plaintiff has complained about a memorandum that was entered into evidence that she drafted and has said that that was unfairly prejudicial because it was portrayed as being sent out externally and that the testimony made it sound like that she had maybe sent that to parents or others had seen it. I think the record is clear that that memorandum was admitted without objection. And testimony in the document itself established that it was not sent out externally. The jury heard that that document was not sent out externally. And the document itself shows it was sent to Dr. Stewart and was copied to people within the school system. I think that memorandum was probative of the superintendent's operational concerns. It was part of the evidence demonstrating that the position did not function as intended and that he felt like he needed to personally intervene in nearly every athletic issue, which was relevant to rebutting the plaintiff's retaliation claim. I think the plaintiff had the opportunity to address that memorandum's context during the trial. And once again, its admission, it was only a piece of a broader evidentiary record. So even if it should not have been entered into evidence, there was no substantial prejudice there. There is one topic that I did want to delve in today that the plaintiff did explore more deeply in her reply brief than she did her initial brief, and that's the Student's First Act. The plaintiff has argued that she should have been able to enter that act into evidence and explore through testimony whether the board complied with that act when Ms. Morris was transferred from Systemwide Athletic Director to a 12-month teacher. And in her reply, she more clearly articulates her position, which is that she was entitled to due process in the form of a hearing under the Student's First Act when she was transferred. And she claims the denial of that hearing was evidence of retaliation, which the jury should have been able to consider. I want to be very clear that it's our position that the plaintiff was provided with all of the due process she was due under the Student's First Act when she was transferred. Under Alabama Code 16-24C-7 subsection C, when a teacher or tenured teacher is transferred without a reduction in pay, like Ms. Morris was here, she must be afforded an opportunity to meet with the board to explain the reasons why she shouldn't be transferred. Here, she was given notice of her transfer. She was given that right to meet with the board. She met with the board to explain why she shouldn't be transferred. At trial, she testified. She presented the board with the reasons why she objected to the transfer. She was represented by counsel at that meeting. And so she was provided all of the procedures she was due under the Student's First Act. As a reminder, the trial court previously dismissed her 1983 due process claim that the board violated her right to due process by failing to afford her a hearing when it transferred her. And the court specifically determined at the motion dismissed stage that the board complied with the Student's First Act when she was transferred. And so that claim has already been adjudicated. And what plaintiff is trying to do is sort of do an in-round-around that ruling and sort of shoehorn this SFA claim into her retaliation claim. And I don't think she can be allowed to do that. I think the other thing I would point out to the court, when it became clear sort of that her argument was that she was asking for a different kind of hearing, under the Student's First Act, and this is ALA Code 16-24C-12, if an employee, a tenured employee believes that they have not been given a hearing that they are entitled to under the Student's First Act, they have a very specific remedy. And that remedy is that they file what I call a direct appeal to the Chief Administrative Law Judge, and this is long, the Office of Administrative Hearings, Division of Administrative Law Judges within the Office of the Attorney General. All this came in the evidence at the trial? This did not come into evidence, Your Honor. What are we talking about? I just think that Ms. Morris is trying to, like I said, shoehorn this idea that she was entitled to a hearing into this retaliation analysis. And she had a specific remedy in state law if she thought she would do a hearing, and she did not exhaust those administrative remedies. I don't think she can do an end-run around and skip that procedure and take that question straight to a jury. And ALJ was specifically given the jurisdiction to determine that under state law, and she did not take advantage of that procedure. And so the idea that she can skip over that process and take that question straight to the jury is one that I think is, she didn't exhaust her administrative remedies. I don't think the jury gets to decide that we didn't comply with the Student's First Act by not giving her a hearing. I think the ALJ had jurisdiction to make that determination. Yeah, I think their argument is that your alleged failure to comply with the state's own procedures suggests retaliatory intent.  So why, I mean, just for the sake of argument, why isn't that good? Why isn't that a good point? Well, first of all, I think we did comply with all the procedures she was due. Absolutely. There's no question in my mind about that. You know, I think the trial court was correct, though, when it said, you know, if we get into sort of a mini trial about the Student's First Act and whether or not she was due a hearing, and then I send the jury back into the jury room with no jury instructions, nothing on the jury verdict form about the Student's First Act. She said, I'm going to leave the jury, and this is a quote, flying blind. And I think that is an excellent point. I think that would have been confusing. And there was not a Student's First Act claim before the jury. Like I said, the due process claim that was based on the idea that she was denied a hearing under the Student's First Act had already been dismissed earlier in the litigation. And so I agree with the trial court that getting into a mini trial about that and then giving no instruction to the jury would have been confusing and would have done more harm than good here. And once again, there is a plethora of evidence about this retaliation claim. So even if this was going to be just one more sort of piece of evidence, you know, laid on the stack, I don't think it was substantially prejudicial to the plaintiff given the amount of evidence we have about the retaliation claim in the record. All right. Thank you. Your red light is on. We appreciate your case. All right. I believe you've saved maybe five minutes. Thank you. Your Honor, as it relates to the Student's First Act, I mean, it's fundamental to Ms. Moore's being able to present her case in chief under Title VII, which is specifically set up to prevent discrimination. Do you disagree with at least the characterization of the procedures from opposing counsel under the Student's First Act? In terms of whether or not there was a due process hearing? Well, just the description. Because the district judge excluded this under Rule 403. And I'm having a hard time. I mean, I think she was right. It essentially required many trials. Just describing the procedures and how much you would have to get into, I mean, how would we find that's an abuse of discretion for the district judge to say that's a sideshow, that needs to stay out? Right. So as it relates to the due process hearing, I do think that's an element. But what's more important is it's somewhat analogous to the situation when, you know, here in Alabama with the Ben and Hat Will State, if we had a client or a plaintiff who had a contract, then those terms of the contract would be relevant to determining whether or not a discriminatory purpose was the cause for an adverse action. Similarly here, as a public educator, Ms. Morris was a tenured employee. She had certain protections by statute, statutory rights. So in order for us to be able to lay that foundation with the jury, we would need to present elements of the Student's First Act, not necessarily as it relates to a due process hearing, but just basically as to what triggers or gives the board authority to then change the terms and conditions of her employment. In particular, this whole financial motive could be dispelled because if there was actually a financial motive, the proper process under the Student's First Act would have been to declare a reduction in force. The reduction in force would have been able to apply district-wide, not to one individual employee. The Student's First Act also specifically speaks to whether or not an employee or public educator can be, the terms and conditions of their employment can be changed based on personal or political reasons. All of those things would have given the jury context to then, as Your Honors has pointed out, to make a credibility evaluation. And they were deprived of that opportunity, and Ms. Morris wasn't able to lay that foundation in her case. And Chief, we specifically went through that in the record with the district court to say why that was so important for us to be able to build our case. As it relates to Dr. Stewart and the principal being able to choose the head football coach, we established through evidence that all of the previous athletic directors had participated in hiring the football coaches. In this particular case, Dr. Stewart said that he excluded Ms. Morris from hiring the football coach because she engaged in protected activity because the football coaches had treated her differently because she was a female, had disregarded her authority because she was a female. He acknowledged that based on the policies and procedures within the district, she was supposed to report that to him. But because of their consistent bad behavior or discriminatory actions toward her, she repeatedly complained to him. And then that was used against her to exclude her from hiring the football coach. And then within a matter of months or so, then she's demoted because of it. So it just seems clear just based on his own testimony. He said, I excluded her because she complained too much. Well, what did she complain about? She complained about sexual harassment. That evidence was his testimony presented to the jury. As it relates to the 2017 memo, there was an email. It was an internal email that we did object to based on the way that it was presented. Because at the time that it was presented, the witness that it was presented through basically testified that Ms. Morris was communicating with members of the public. And some of the commentary in the email maybe wouldn't have been proper for forward-facing to the public. But in terms of an internal memo amongst her colleagues, it was completely different. And counsel at the time basically presented the question to the witness, and the witness affirmed that it was something that had been published publicly. At that time, we did object. We do believe that that was prejudicial because, again, if you look at the specific testimony from the board, it establishes that Ms. Morris engaged in protected activity and then she was subjected to adverse action. The board's whole case in chief was to paint Ms. Morris as being insatiable and somebody who is difficult to work with. Therefore, whatever she was subjected to was justified. This memo was presented in a way to really highlight the main theme of their argument. And so, therefore, it was something that had an extreme, from our perspective, an extreme impact on the jury. And today, I believe my colleagues stated that the move from athletic director position to PE teacher was an adverse action. But based on my recollection from the trial and the record, I don't think that that was ever something that they acknowledged that it was an adverse action, that it was essentially a lateral move because she didn't have any loss in pay. And again, the reason why she didn't have any loss in pay is because the Students First Act says she could not have any loss in pay. And that's something else that we were deprived from presenting. And with that, I'll take my seat. Thank you for your time. All right. Thank you. Thank you. We have your case. Thank you. All right. So we will move on to...